## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| THE GOODYEAR TIRE AND RUBBER COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 5:11-cv-01170 |
| v. | ) ) | Judge Benita Y. Pearson |
| G4S SECURE SOLUTIONS (U.S.A.) INC., f/k/a THE WACKENHUT CORPORATION, | ) ) ) ) | |
| Defendant. | ) | |

## MOTION FOR SUMMARY JUDGMENT BY
## PLAINTIFF THE GOODYEAR TIRE AND RUBBER COMPANY

Pursuant to Federal Rule of Civil Procedure 54, Plaintiff The Goodyear Tire and Rubber

Company ("Goodyear") hereby moves this Court for an order granting summary judgment in its

favor on Goodyear's Complaint for Declaratory Judgment and Breach of Contract

("Complaint").  As set forth in the attached Memorandum in Support, based on the undisputed

factual record and the plain and unambiguous language of the contract documents at issue,

Defendant G4S Secure Solutions (U.S.A.) Inc. (f/k/a The Wackenhut Corporation)

("Wackenhut") breached the indemnification contract between the parties when Wackenhut

refused to indemnify, defend, and hold harmless Goodyear in violation of its contractual duties owed to Goodyear.  Goodyear respectfully requests that summary judgment be granted in its favor and that (1) declaratory judgment be issued finding that Wackenhut is under a contractual obligation to indemnify Goodyear for the negligence claim brought by Wackenhut's former employee, (2) Wackenhut be found in breach of the indemnification agreement by its refusal to tender a defense thereunder, and (3) a blanket waiver of subrogation preludes Wackenhut's counterclaim for subrogation.

Respectfully submitted,

    /s/Elizabeth T. Smith
Elizabeth T. Smith (#0012075)
VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
Columbus, Ohio 43215
(614) 464-5443
(614) 719-4976 *facsimile*
etsmith@vorys.com

*Counsel for Plaintiff*
*The Goodyear Tire and Rubber Company*

*Of Counsel*:
Thomas R. Crookes  (#0038969)
Ashley M. Manfull  (#0071372)
VORYS, SATER, SEYMOUR AND PEASE LLP
106 South Main Street, Suite 1100
Akron, Ohio 44308
(330) 208-1000
(330) 208-1001 *facsimile*
trcrookes@vorys.com
ammanfull@vorys.com

## MEMORANDUM IN SUPPORT

### I.     PRELIMINARY STATEMENT

In 2004, Alabama resident, Jerry Wells brought in the Etowah County, Alabama state trial court both a workers' compensation claim against his Alabama employer, Wackenhut, and a negligence claim against Goodyear, alleging that he was injured while working as a Wackenhut-employed security guard and independent contractor to Goodyear, at a Goodyear facility in Gadsden, Alabama.  Shortly thereafter, and pursuant to an indemnification agreement, Wackenhut agreed to indemnify and defend Goodyear against Wells' negligence claim.  In the interim, Wells was awarded Alabama workers' compensation benefits against Wackenhut. Then, just a month before trial against Goodyear, Wackenhut withdrew its defense and denied indemnification, on the alleged ground that Wells' injuries did not occur as a result of Wackenhut's performance or negligence.  Wackenhut's withdrawal of defense and refusal to indemnify Goodyear arises from an unsupportable reading of the clear language of the indemnification agreement between the parties, which requires that Wackenhut indemnify Goodyear for acts "arising in any manner out of [Wackenhut's] performance of this Agreement."

In light of the clear and unambiguous contractual requirements, and the indisputable factual record, Goodyear submits this motion for summary judgment declaring that Wackenhut is contractually required to indemnify, defend, and hold Goodyear harmless for the claims asserted by Wells against Goodyear.  In addition, Goodyear moves for judgment that Wackenhut's continued refusal to indemnify and defend Goodyear constitutes a breach of the Agreement, from which Goodyear has suffered and will continue to suffer damages.  These damages include Goodyear's costs and fees in instituting the instant action, damages that Goodyear is entitled to under Ohio law.

## II.    STATEMENT OF FACTS

### A.    Wackenhut's Contract to Provide Security Services and Its Obligations of Indemnification and Subrogation

Goodyear entered into a contract with Wackenhut on or about May 15, 2003 wherein Wackenhut agreed to supply independent contractor security guard personnel and protective services at Goodyear's plant facilities in Gadsden, Alabama.  (Joint Stipulated Facts ("JSF"), Dkt. No. 17, ¶ 6.)  The mutual obligations of the parties are set out in the Security Guard Vendors Agreement.  ("Agreement," Exhibit 1.)[1]  Pursuant to the Agreement, Wackenhut agreed to furnish "trained, professional security guards" at the Goodyear premises.  (Id. at ¶ 1.)  The security guards provided were employees of Wackenhut, and Wackenhut expressly agreed to the following indemnification provision:

> VENDOR'S INDEMNITY.  VENDOR expressly agrees to indemnify, defend and hold GOODYEAR, its directors, officers and employees harmless from any and all claims, demands, suits, damages, fines and penalties on account of any violation of applicable law, or any loss, damage, or injury to any persons or property whatsoever caused by any negligent act or omission or wrongful act by VENDOR, its employees or agents, **or arising in any manner out of VENDOR's performance of this Agreement**, including without limitation claims arising from personal injury, illness or death due to the negligent act or omission of any GUARD assigned to the PLANT by VENDOR, whether or not such GUARD was acting within the scope of his or her authority.

(Id. at ¶ 5) (emphasis added)  In addition, under the Agreement, Wackenhut was to provide workers' compensation insurance for its employees and blanket waivers of subrogation for all of the required policies, including workers' compensation coverage.  (Id. at ¶ 6.)[2]

### B.    Wackenhut's Employee Is Injured in the Performance of his Employment

Jerry Wells, a Wackenhut employee and security guard at the Goodyear premises in 2003, claimed that he suffered injury or developed a disease while in the line and scope of his

---

[1] Referenced Exhibits are attached to the JSF (Dkt. No. 17). Exhibit 1 is attached hereto for the Court's convenience.
[2] Under Alabama law, an employer may seek subrogation for workers' compensation benefits it has paid where the harm to the injured employee was caused by a third-party.  Ala. Code § 25-5-11.  However, the Agreement provided that Wackenhut's insurer had to waive any subrogation rights it might otherwise have.  (Agreement, ¶ 6.)

employment with Wackenhut on the Goodyear premises.  (JSF ¶ 10; Exhibit 2.)  Wells filed a complaint for workers' compensation benefits under Alabama law against his employer, Wackenhut, in the Circuit Court of Etowah County, Alabama.  (JSF ¶ 9.)  In response, Wackenhut admitted that "there existed between [Wackenhut and Wells] the relationship of employer and employee, and that all parties are subject to the Workers' Compensation Laws of Alabama." (JSF ¶ 11; Exhibit 3, at ¶ 1.)

Wells then joined Goodyear into the suit by alleging negligence against Goodyear.[3]  (JSF ¶ 12.)  Specifically, Wells' allegation against Goodyear stated that:

(2)     Plaintiff avers that his primary job with his respective employer, named defendant Wackenhut Corporation, was that of a security officer.

(3)     Plaintiff avers that on the date which is made the basis of plaintiff's claims against the defendants, plaintiff allowed a [Goodyear] employee to borrow the golf cart owned by the plaintiff's employer for an unspecified reason. Requests for same have been generally made through the course of employment with plaintiff's employer.

(4)     Plaintiff avers that when the golf cart was returned to him, [Goodyear], by and through its agent-employee negligently or wantonly allowed a dangerous substance to be placed upon the steering wheel of plaintiff's work golf cart that immediately and subsequently made contact with the hands of the plaintiff, causing him to incur rubber poisoning.

(Id.; Exhibit 4.)  Thus, Wells claimed that he had sustained injury in the course and scope of his work with Wackenhut while providing security services to Goodyear.

## C.     Goodyear Tenders Its Claim to Wackenhut

In response to Wells' claims against Goodyear, Goodyear timely tendered the claim and its defense to Wackenhut pursuant to the Agreement.  (JSF ¶ 14; Exhibit 5.)  Thereafter,

---

[3] Unlike Ohio for example, in Alabama, a workers' compensation plaintiff may join other parties to the workers' compensation suit and seek additional damages.  Ex parte Williams, 895 So. 2d 924 (Ala. 2004) ("Section 25-5-11(a), Ala. Code 1975, authorizes an injured employee to bring an action for damages against a third-party tortfeasor while concurrently maintaining an action against his or her employer for workers' compensation benefits.").  The ability to sue a third-party for damages, thus, does not affect the claim against the employer for workers' compensation benefits.

Wackenhut, through a third party administrator, Gallagher Bassett, accepted the tender of defense of Wells' claim against Goodyear and indemnification of Goodyear, pursuant to a reservation of rights.  (Id. at ¶ 15.)  This included the right to withdraw the indemnification acceptance if it were later determined that "the incident did not arise out of the vendor's performance or negligence under the contract."  (Id.; Exhibit 6.)

### D. The Alabama Court in The Workers' Compensation Action Finds Wells Was Injured in Performance of His Employment

Wells' workers' compensation claim against Wackenhut and his negligence claim against Goodyear were bifurcated, with the workers' compensation claim against Wackenhut litigated first.  (JSF ¶ 16.)  Following the trial on the workers' compensation matter, the trial court found that: "This accident occurred … *while plaintiff was working as a security officer for his employer Wackenhut Corporation* at the Goodyear Tire & Rubber Plant location in Gadsden."  (JSF ¶ 17; Exhibit 7 (emphasis added).)  The court further held that Wells was permanently and totally disabled and unable to work.  (Id.)  The Alabama Court of Appeals affirmed. (JSF ¶ 19; Exhibit 8.)  After this finding, the negligence claims against Goodyear were next to be litigated.

### E. Wackenhut Withdraws Its Indemnification of Goodyear

Approximately one month before the trial on Wells' negligence claims against Goodyear was to commence and after months of discovery and litigation, Wackenhut, through its administrator, wrote a letter to counsel for Goodyear stating Wackenhut was withdrawing its representation of Goodyear and denying indemnification because it alleged "this incident did not arise out of The Wackenhut Corporation's performance or negligence under the contract." (JSF ¶ 20; Exhibit 9.)  Wackenhut withdrew its defense and indemnification approximately one month before trial was set to commence.  To date, Wackenhut has continued its refusal to

provide the indemnification and defense required under the Agreement, thus necessitating Goodyear's filing of this action.  The underlying action has not yet proceeded to trial.

## III.  LAW AND ARGUMENT

### A.  Summary Judgment Standard And Applicable Law

As this Court is more than well aware, summary judgment is merited when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law."  See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Summary judgment is not a disfavored procedural shortcut and is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'"  Celotex, 477 U.S. at 327.  Under the Agreement's choice of law provision, the parties agreed that the interpretation and construction of the Agreement "will be governed and interpreted under, the law of the State of Ohio."  (Agreement, ¶ 18.C.)  Despite the application of Alabama law to the underlying negligence and workers' compensation actions in Alabama State Court, the issue of the rights of the parties under the Agreement is governed by Ohio law.

### B.  Based on the Plain and Unambiguous Language of the Agreement, Goodyear Is Entitled to Summary Judgment Against Wackenhut for Declaratory Judgment and Breach of Contract

Under Ohio law, "the fundamental elements of a breach of contract claim include: (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff as a result of the breach."  Cranpark, Inc. v. Rogers Group, Inc., 721 F. Supp. 2d 613, 622 (N.D. Ohio 2010) (citing Savedoff v. Access Grp., Inc., 524 F.3d 754, 762 (6th Cir. 2008)). Here there is no dispute that a contract exists and that Wackenhut was to perform security services for Goodyear.  (JSF ¶ 6.)  The issue before this Court is whether the

contract provides for indemnification of Goodyear under the circumstances set forth. If it does, then there is no dispute that Wackenhut is in breach of the contract for its withdrawal of tender.

It is well-settled that contracts must be enforced according to their plain language.  As long as a contract is clear and unambiguous, the rights and obligations of the parties are determined on the plain language of the agreement.  <u>Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm</u>, 73 Ohio St. 3d 107, 108 (1995).  "If the meaning [of a contract] is apparent, the terms of the agreement are to be applied, not interpreted."  <u>Albert v. Shiells</u>, No. 02AP-354, 2002 Ohio App. LEXIS 6836 at *7 (Ohio App. 10th Dist. Dec. 19, 2002) (citations omitted).  Where the terms of a contract are clear and unambiguous, a "court cannot find a different intent from that expressed in the contract."  <u>E.S. Preston Associates, Inc. v. Preston</u>, 24 Ohio St. 3d 7, 10 (1986).  Further, "[c]ontracts should be interpreted in a way that renders all the provisions meaningful and not mere surplusage."  <u>Sherwin-Williams Co. v. Travelers Cas. & Sur. Co.</u>, No. 82867, 2003 Ohio App. LEXIS 5357 (Ohio App. 8 Dist. Nov. 13, 2003).

These general hornbook rules of contract interpretation similarly apply to indemnification provisions.  <u>Worth v. Aetna Casualty & Surety Co.</u>, 32 Ohio St. 3d 238, 240 (1987) ("[i]ndemnity arises in contract … and is the right of a person, who has been compelled to pay what another should have paid, to require complete reimbursement").  Like any other contract, the "nature of an indemnity relationship is determined by the intent of the parties as expressed by the language used."  <u>Id.</u>

Under the plain language of the Agreement, Wackenhut expressly agreed "to indemnify, defend and hold Goodyear … harmless from any and all claims, demands, suits, damages, fines and penalties … **arising in any manner out of Wackenhut's performance of this Agreement**."  (Agreement, at ¶ 5) (emphasis added).  Any other reading of the contractual

6

language either ignores rules of English language construction or renders other parts of the contract as surplusage.

> 1. *There is no issue that Wells' injuries arose out of the course and scope of his employment with Wackenhut and therefore, out of Wackenhut's performance of its contract with Goodyear*

The factual record conclusively establishes that Wells' injuries occurred within the scope of his work for Wackenhut.  In the litigation between Wells and Wackenhut in Alabama state court, it was established that:

- Wells was acting in the course and scope of his work when he was injured,

- Wells' performance at the time he was injured was for work Wackenhut was contractually providing Goodyear under the terms of the Agreement, and

- Wells' claims against Goodyear are or were **"arising in any manner out of VENDOR's [Wackenhut's] performance of this Agreement."**

In the underlying Alabama state court litigation, Wells claimed that he was working as a Wackenhut security guard at the Premises when he allegedly came into contact with some substance causing his injuries.  (JSF ¶ 10.) In response to Wells' workers' compensation claim, Wackenhut admitted that the Workers' Compensation laws of Alabama applied. (Exhibit 3, at ¶ 1.)   Later, after Wells' joined Goodyear to the suit, alleging negligence, Wackenhut acknowledged in response to Goodyear's request for indemnification, that the indemnification provision in the Agreement with Goodyear applied.  (JSF ¶ 15; Exhibit 5 (initially agreeing to indemnify Goodyear on the grounds that Wells "alleges that chemicals left on a steering wheel of his golf cart, by Goodyear employees, caused his injuries").)

The Etowah County, Alabama Court held Wells' injury occurred in the course and scope of his employment with Goodyear:

> This accident occurred when the [Wells] … was working as a security officer for his employer Wackenhut Corporation, at the Goodyear Tire & Rubber Plant location in Gadsden.

7

(Exhibit 6, at ¶ 4.)[4]  There is no dispute that Wells' injury occurred within the scope of his employment with Wackenhut, and therefore, while Wackenhut, through Wells, was in the performance of the terms of its agreement with Goodyear.

Not only do the prior Alabama proceedings leave no factual dispute that Wells was injured in the course of his employment, the prior judicial decisions establish as much as a matter of law through the doctrine of issue preclusion.  See Osborn v. Knights of Columbus, 401 F. Supp. 2d 830, 832 (N.D. Ohio 2005) ("Issue preclusion mandates that if a court decides an issue of fact or law necessary to its judgment, that decision precludes re-litigation of that issue in another suit involving a party, or one in privity with a party, to the first case."); Blackwell v. Gorman, 142 Ohio Misc. 2d 50, 65 (Franklin County 2007).  As a result, there can be no dispute that Wells' injuries occurred within the scope of his employment.

> ### 2. Wackenhut's Refusal to Indemnify Based on the Lack of Wackenhut's Negligence Is not Supported by the Language of the Agreement

Wackenhut has asserted that it is relieved of its defense and indemnification obligation because Wells' accident did not arise out of Wackenhut's negligence.  However, the Agreement contains no such limitation that a claim must arise out of Wackenhut's negligence to be covered by the duty to indemnify: the Agreement provides for indemnification against _any and all claims_ arising _in any manner_ out of Wackenhut's performance of the Agreement.  (Agreement, at ¶ 5.) The express contractual language is worth repeating here:

> VENDOR'S INDEMNITY.  VENDOR expressly agrees to indemnify, defend and hold GOODYEAR, its directors, officers and employees harmless from any and all claims, demands, suits, damages, fines and penalties on account of any violation of applicable law, or any loss, damage, or injury to any persons or property whatsoever caused by any negligent act or omission or wrongful act by VENDOR, its employees or agents, **or arising in any manner out of**

---

[4] Goodyear continues to maintain, however, that this is not a finding that the injury was caused by any negligence of Goodyear and Goodyear continues to dispute in Etowah County any negligence on its part as well as the lack of any causal relationship between anything at Goodyear and Wells' alleged injuries.

> **VENDOR's performance of this Agreement**, including without limitation claims arising from personal injury, illness or death due to the negligent act or omission of any GUARD assigned to the PLANT by VENDOR, whether or not such GUARD was acting within the scope of his or her authority.

(Id. at ¶ 5) (emphasis added.) As noted in the normal course of the English language, the comma "indicates the smallest break in sentence structure," and "[i]tems in a series are normally separated by commas." The Chicago Manual of Style (15th ed.), University of Chicago Press. Also Practical English Handook, 4th ed., Watkins, Dillignham, Martin (the "comma is chiefly used (1) to separate equal elements, such as independent clauses and items in a series…"). Simply, the reading that is commanded by common usage includes that the scope of Wackenhut's indemnification includes any incident arising out of Wackenhut's performance. See Carroll Weir Funeral Home v. Miller, 2 Ohio St. 2d 189, 192 (1965) ("In interpreting a provision in a written contract, the words used should be read in context and given their usual and ordinary meaning.").

Therefore, the above-cited lengthy sentence must be read as "VENDOR [Wackenhut] expressly agrees to indemnify, defend and hold GOODYEAR … harmless from any and all claims … on account of … any loss, damage, or injury … to any persons or property whatsoever … arising in any manner out of VENDOR's performance of this Agreement…." There is no grammatically correct reading that requires that the Vendor, Wackenhut, must be negligent in order for the indemnification provision to apply.

Considering the entire four corners of the Agreement gives further credence to the unreasonableness of Wackenhut's purported reading of the indemnification provision. Sherwin-Williams, 2003 Ohio App. LEXIS 5357, at *9 ("[c]ontracts should be interpreted in a way that renders all the provisions meaningful and not mere surplusage"). The Agreement provides also that Wackenhut will provide blanket waivers of subrogation to Goodyear—i.e., that Wackenhut

9

cannot seek subrogation from Goodyear for any workers' compensation benefits that Wackenhut must pay to its employees.  (Agreement, at ¶ 6.)  Thus, the entirety of the Agreement is to ensure that Goodyear had no liability for injuries to Wackenhut's employees which arose in the course of their performance, even if the employee were negligent and acting outside the scope of employment.  The entirety of the terms of the Agreement clearly and unambiguously leave liability in the hands of Wackenhut for the actions and injuries of its employees.

Because Wackenhut's purported reasons for refusing to indemnify and defend Goodyear are without justification in law or fact, Goodyear is entitled to a judicial declaration on Count I of the Complaint that Wackenhut is required to indemnify, defend, and hold harmless Goodyear under the terms of the Agreement for all claims raised by Wells' against Goodyear.  Further, Wackenhut should be found in breach of the Agreement for its failure to indemnify and to defend, as alleged in Count II of the Complaint.

### C.  Wackenhut's Immunity Defense Fails to Raise a Material Dispute

Wackenhut attempts to escape the effect of its indemnification agreement by asserting a defense that it is immune under Ohio's workers' compensation exclusivity doctrine. (Counterclaim, Dkt. No. 8, ¶¶ 53-54).  However, this is nothing more than an attempt to confuse the legal authorities that govern Wells' workers' compensation benefits under Alabama law with Goodyear's right to contractual indemnification, as interpreted under Ohio law.  Ohio law specifically permits indemnification agreements of the exact type between Goodyear and Wackenhut, because Wells' injuries are covered under *Alabama's* workers' compensation laws.

#### 1.  *Ohio's Indemnification Statute Does not Apply—Wackenhut Is not a Covered Employer Under Ohio's Workers' Compensation Laws for Wells' Claim*

As asserted by Wackenhut, both the Ohio Revised Code and Constitution provide that *Ohio's* workers' compensation system is the exclusive redress for covered employers and third-

parties for any workplace injury arising under Ohio's system.  Ohio Const. Art. II, § 35 ("any employer who pays the premium or compensation provided by law … shall not be liable to respond in damages at common law or by statute…."); Ohio Rev. Code § 4123.74.  As a prerequisite for Ohio's immunity to apply in suits brought by third-parties for indemnification, an employee must be covered under ***Ohio's*** workers' compensation system.  <u>Kendall v. U.S. Dismantling Co.</u>, 20 Ohio St. 3d 61, 65 (1985) (applying the immunity to "an employer ***in compliance with the workers' compensation laws of <u>this</u> state***") (emphasis added).  Moreover, the plain language of the statute, R.C. § 4123.74, refers to employers who are compliant with the required payments to ***Ohio's*** workers' compensation fund.  Wackenhut has never asserted paying any premium for Wells' coverage under Ohio law.  Therefore, because Wells was not a covered employee under Ohio's workers' compensation system, Ohio substantive workers' compensation law, including the immunity asserted by Wackenhut, simply does not apply.

Further, Wells, who was not working in Ohio at the time he sustained his alleged injuries, would be specifically excluded by Ohio's system.  R.C. 4123.54(H) (employees covered by another state's workers' compensation system are not eligible for Ohio benefits).  Goodyear has found no case law or other authority that would support the proposition that Ohio's immunity statute would apply in the event that the injured worker was not covered in Ohio.

Nor can Wackenhut seek refuge under the choice of law provision in the Agreement.  The Agreement only provides that the Agreement itself "will be governed by and interpreted under, the laws of the State of Ohio."  (Agreement, at ¶ 18(C).)  However, under established Sixth Circuit law, such a provision only applies the selected law to contract claims and questions of contract interpretation.  <u>E.g.</u>, <u>Ruffing v. Masterbuilt Tool & Die, LLC</u>, Case No. 1:08-cv-01264, 2009 U.S. Dist. LEXIS 4574, at *18 (N.D. Ohio Jan. 23, 2009) (language in an agreement that it

11

"will be governed by the law of the State of Ohio" only extends Ohio law to "all questions of contract interpretation."). Here, the question of whether workers' compensation immunity should apply is not a question of contract interpretation. As a result, the Agreement's choice of law provision cannot extend to substantive Ohio workers' compensation law, and Ohio's workers' compensation exclusivity doctrine has no place in this dispute.

2.      *Alabama's Workers' Compensation Laws Do not Provide Immunity*

Because Wells was employed by Wackenhut in Alabama and was covered by Alabama's workers' compensation laws, if any immunity for a covered employer attached, it would be under Alabama law. Looking to substantive Alabama workers' compensation law, there is no applicable bar to indemnification by a covered Alabama employer. Like Ohio, Alabama has an exclusivity statute that is designed to make the workers' compensation system the sole source of recovery for an injured employee as against a covered employer. Ala. Code § 25-5-53. The scope of that exclusive recovery, however, does not shield a covered employer from a claim of indemnification as against a third-party, such as that resulting from the Agreement entered into between Goodyear and Wackenhut.

To the contrary, the Alabama Supreme Court upheld a claim for indemnification by Goodyear against a vendor, under almost identical language. Goodyear Tire and Rubber Co. v. J.M. Tull Metals Co., 628 So. 2d 633 (Ala. 1993). In that case, the defendant, Tull, contracted with Goodyear to provide metal products to Goodyear's plant in Gadsden. Id. at 634. The agreement between the parties contained an indemnification provision stating that "Seller will indemnify, save harmless and defend Purchaser from all liability for loss, damage or injury to person or property in any manner arising out of or incident to the performance of this Purchase Order." Id. After a Tull employee was injured at the Gadsden plant, he sued Goodyear for negligence and Goodyear sought indemnification from Tull. Id. Tull challenged Goodyear's

12

claim for indemnification, arguing that Alabama's workers' compensation immunity applied because the injured employee was covered under Alabama workers' compensation. Id.

The Alabama Supreme Court held "that enforcement of an express indemnity agreement against an employer by a third party does not violate the exclusive remedy provision of Alabama's Workers' Compensation Act." Id. at 638. The court continued, "it appears that Goodyear's action is not an action for damages on account of the employee's injury, but rather an action for indemnity, or reimbursement, on account of an independent contractual duty owed by Tull to Goodyear." Id.

The facts present here fall squarely within the Tull decision:

- Goodyear and Wackenhut entered into an Agreement with an express indemnification provision wherein Wackenhut agreed to indemnify Goodyear for any incident "**arising in any manner out of VENDOR's performance of this Agreement**" (Agreement, Exhibit 1, at ¶ 5) (compare to language in Tull: "in any manner arising out of or incident to the performance of this Purchase Order").

- Wells was an employee of Wackenhut and, as admitted by Wackenhut, was covered by Wackenhut under Alabama's workers' compensation. (Exhibit 3, ¶ 1.)

- Wells was injured in the course of his employment with Wackenhut. (Exhibit 6.)

While the contract between Wackenhut and Goodyear, by its terms, is to be interpreted and enforced pursuant to Ohio law, it is also clear that the underlying workers' compensation issues are governed by Alabama law. Wackenhut, as an Alabama employer, cannot assert immunity under Alabama workers' compensation law to avoid its separate contractual obligation under Ohio law. Simply, neither Alabama nor Ohio law invalidates the separate and independent indemnity agreement between Goodyear and Wackenhut.

### D. Goodyear Is Entitled to Its Costs and Attorneys Fees in Pursuing this Action

Under Ohio law, an indemnitee is entitled to "complete reimbursement" upon a finding that a loss is covered under the indemnification agreement. See Worth, 32 Ohio St. 3d at 240.

13

Full reimbursement includes both the full cost covered by the indemnification agreement, along with any costs or fees incurred in subsequent litigation to seek enforcement of the indemnification agreement.  Allen v. Std. Oil Co., 2 Ohio St. 3d 122, 126 (1982) ("[a]n indemnitee, no less than an insured, is entitled to recover attorney fees and expenses when an indemnitor wrongfully refuses to defend an action against the indemnitee; [a]ccordingly, we hold that when an indemnitor wrongfully refuses to defend an action against an indemnitee, the indemnitor is liable for the costs, including attorney fees and expenses, incurred by the indemnnitee defending the initial action and in vindicating its right to indemnity in a third-party action brought against the indemnitor").  Accordingly, Goodyear requests that the Court order Wackenhut to pay the costs Goodyear has expended enforcing those rights.

### E.    Goodyear is Entitled to Judgment on Wackenhut's Subrogation Counterclaim

Wackenhut's Counterclaim asserts a claim for subrogation for amounts paid on Goodyear's behalf during Wackenhut's brief tender of defense.  (Counterclaim, Dkt. No. 8, ¶¶ 15-19.)  However, Wackenhut's claim is specifically barred by a waiver of its subrogation rights contained within the Agreement with Goodyear, which provides that Wackenhut0"will obtain , and thereafter maintain in full force and in good standing throughout the term hereof … Blanket Waivers of Subrogation for all the above insurance policies." (Agreement, at ¶ 6.)  Consistent with the entirety of the contract contained within its four corners, Wackenhut was to assume all liability for injuries to its own employees and as part of that, expressly waived any subrogation right it otherwise might have under Alabama substantive law.   Not only is the request by Wackenhut in breach of the Agreement, but Goodyear is also entitled to judgment on Wackenhut's Counterclaim asserting its right to subrogation.

Such waiver provisions are enforceable under Ohio law.  It is well-recognized under established Ohio law, a waiver of a subrogation right precludes a party's ability to later seek

subrogation.  <u>Acuity v. Interstate Constr.</u>, 2008-Ohio-1022, 2008 Ohio App. LEXIS 896, ¶13 (Ohio App. Mar. 7, 2008) ("Ohio courts have repeatedly held that waiver-of-subrogation provisions are valid and enforceable.") (citing <u>Nationwide Mutual Fire Ins. Co. v. Sonitrol, Inc. of Cleveland</u>, 109 Ohio App.3d 474, 482 (Ohio App. 1996); <u>Len Immke Buick, Inc. v. Architectural Alliance</u>, 81 Ohio App.3d 459, 464, (Ohio App. 1992)).

Because the Agreement provides for blanket waivers of subrogation for potential claims against Goodyear, Wackenhut cannot now assert a claim for subrogation against Goodyear. Therefore, Wackenhut is in breach of the Agreement for so asserting, and Goodyear is entitled to judgment on Wackenhut's subrogation counterclaim.

## IV.    CONCLUSION

For the foregoing reasons, Goodyear is entitled to summary judgment on its declaratory judgment and breach of contract claims, as well as Wackenhut's counterclaim for subrogation.

Respectfully submitted,

<u>/s/Elizabeth T. Smith</u>
Elizabeth T. Smith (#0012075)
VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
Columbus, Ohio 43215
(614) 464-5443
(614) 719-4976 *facsimile*
etsmith@vorys.com

*Of Counsel*:
Thomas R. Crookes  (#0038969)
Ashley M. Manfull  (#0071372)
VORYS, SATER, SEYMOUR AND PEASE LLP
106 South Main Street, Suite 1100
Akron, Ohio 44308
(330) 208-1000
(330) 208-1001 *facsimile*
trcrookes@vorys.com
ammanfull@vorys.com

*Counsel for Plaintiff*
*The Goodyear Tire and Rubber Company*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served upon the parties by operation of the Court's electronic filing system this 15th day of March, 2012.

<u>/s/ Elizabeth T. Smith</u>

15

## <u>CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7.1(f)</u>

Pursuant to Local Rule 7.1(f), the undersigned counsel hereby certifies that that the above captioned action has been assigned to the standard track, and that Plaintiff's Motion for Summary Judgment is in compliance with the page limitations set forth in L.R. 7.1(f).

*/s/ Elizabeth T. Smith*