PEARSON, J.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| GOODYEAR TIRE & RUBBER COMPANY, | ) ) ) |
| Plaintiff, | ) CASE NO. 5:11CV01170 ) |
| | ) JUDGE BENITA Y. PEARSON |
| v. | ) ) |
| G4S SECURE SOLUTIONS (USA), INC., | ) ) |
| | ) **MEMORANDUM OF OPINION AND** |
| Defendant. | ) **ORDER** [Resolving ECF Nos. 16, 17.] |

This controversy arises out of the parties' disagreements with respect to an indemnification provision and a subrogation waiver in a contract for security services. The Court is called to decide cross Motions for Summary Judgment filed by Plaintiff Goodyear Tire & Rubber Co. and Defendant G4S Secure Solutions (USA), Inc. f/k/a The Wackenhut Corporation ("Wackenhut"). Having reviewed and considered the briefs attending the two Motions, as well as the attached exhibits and the governing law, the Court grants Goodyear's Motion for Summary Judgment (ECF No. 16) and denies Wackenhut's Motion for Summary Judgment. ECF No. 17.

### I. Factual and Procedural History

### a. Stipulated Facts

Goodyear, an Ohio corporation, owns and operates a tire manufacturing plant in Gadsden, Alabama. ECF No. 15 at 1. Goodyear entered into a Security Guard Vendors Agreement ("Agreement") with Wackenhut, a Florida corporation, wherein Wackenhut agreed to provide security personnel and other protective services to Goodyear at the Gadsden plant. ECF No. 15 at 1-2. During the course of their contractual relationship, a lawsuit was initiated against

(5:11CV01170)

Goodyear and Wackenhut in the Circuit Court of Etowah County, Alabama.  ECF No. 15 at 2. The plaintiff, Jerry Wells, claimed that while working as a Wackenhut security officer at the Gadsden plant, he allowed a Goodyear employee to borrow a golf cart owned by Wackenhut, and, when the golf cart was returned, Wells' hands touched a substance left upon the steering wheel that caused him to suffer rubber poisoning.  ECF Nos. 15-2 at 3; 15-4 at 2; 15-7 at 1. After a hearing, the Alabama court determined that Wells had become "totally and permanently disabled" due to his injury and awarded judgment in Wells' favor on his claim seeking workers' compensation benefits from Wackenhut.  ECF No. 15-7 at 2, 4-5.  Wells' remaining claim of negligence against Goodyear, however, has not resolved and is pending in the Alabama court. ECF No. 15 at 3.

     Subsequently, in a letter, Wackenhut agreed to defend and indemnify Goodyear in the Wells litigation pursuant to the terms of the Agreement.  ECF No. 15-6.  The Agreement contains an indemnification provision, which provides:

> 5. <u>VENDOR'S INDEMNITY</u>.  VENDOR expressly agrees to indemnify, defend and hold GOODYEAR, its directors, officers and employees harmless from any and all claims, demands, suits, damages, fines and penalties on account of any violation of applicable law, or any loss, damages or injury to any persons or property whatsoever caused by any negligent act or omission or wrongful act by VENDOR, its employees or agents, or arising in any manner out of VENDOR'S performance of this Agreement, including without limitation claims arising from personal injury, illness or death due to the negligent act or omission of any GUARD assigned to the PLANT by VENDOR, whether or not such GUARD was acting within the scope of his or her authority.

ECF No. 15-1 at 3-4.  Wackenhut reserved the right, however, to decline to indemnity at a later time.  ECF No. 15-6.  Later, Wackenhut withdrew its agreement to indemnify, claiming that its investigation revealed that "this incident did not arise out of The Wackenhut Corporation's

2

(5:11CV01170)

performance or negligence under the contract." ECF No. 15-9.  Wackenhut has also made a formal demand upon Goodyear for subrogation to recoup the workers' compensation payments it made to Wells pursuant to the judgment of the Alabama court.  ECF 15 at 3.

### b. Procedural History

Goodyear has now instituted an action against Wackenhut in this Court.[1]  ECF No. 1.  In Count One of the Complaint, Goodyear seeks a declaration under 28 U.S.C. § 2201 that the Agreement expressly requires that Wackenhut (1) indemnify Goodyear for the costs of defending the Wells lawsuit and for any judgment Wells may recover against Goodyear, and (2) waive all of its subrogation rights with respect to Goodyear.  In Count Two, Goodyear alleges that Wackenhut breached the Agreement by withdrawing its defense and indemnification and by asserting its subrogation demand.  Wackenhut responded by filing an Amended Answer and Amended Counterclaims.  ECF No. 8.  In Counterclaim One, Wackenhut seeks a declaratory judgment that it is not required to indemnify Goodyear under the Agreement.  Wackenhut also asserts, in Counterclaim Two, a subrogation claim for the amounts it has paid to Wells for lost wages and medical expenses and for any amounts it may be required to pay in the future.

Thereafter, Goodyear and Wackenhut each filed Motions for Summary Judgment upon all outstanding claims, supported with memoranda of law.  ECF Nos. 16, 17, 17-1.  The parties then filed opposition briefs (ECF Nos. 18 and 19), as well as replies.  ECF Nos. 20 and 21.

---

[1] The Court has jurisdiction over this action under the diversity statute, 28 U.S.C. § 1332, as this action involves citizens of different States and the value in controversy exceeds $75,000.

(5:11CV01170)

## **II. Legal Standard**

The summary judgment procedure is "designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (internal quotations omitted). "Summary judgment is appropriate only 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled judgment as a matter of law.'" *EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012) (*quoting* Fed. R. Civ. P. 56(a)). "Where the moving party carries its initial burden, the nonmoving party 'may not rest upon its mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial.'" *Ellington v. City of East Cleveland,* 689 F.3d 549, 552 (6th Cir. 2012) (*quoting Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009)). "'A genuine issue of material fact exists when there is sufficient evidence for a trier of fact to find for the non-moving party.'" *U.S. ex rel. Wall v. Circle C Construction, LLC*, 697 F.3d 345, 351 (6th Cir. 2012) (*quoting Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006)). "Reviewing the facts in the light most favorable to the nonmoving party, the court must ultimately determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Blizzard v. Marion Technical College*, 698 F.3d 275, 282 (6th Cir. 2012) (internal quotations omitted).

Cross motions for summary judgment are examined under the usual Rule 56 standards, and a court "must evaluate each motion on its own merits and view all the facts and inferences in the light most favorable to the non-moving party." *Spectrum Health Continuing Care Group v.*

(5:11CV01170)

*Anna Marie Bowling Irrecoverable Trust*, 410 F.3d 304, 309 (6th Cir. 2005) (quotations omitted).

### III. Discussion

Goodyear and Wackenhut present to the Court three broad issues for adjudication. The first is whether the indemnification provision is enforceable as a matter of law and public policy. The second is whether, if enforceable, the terms of the provision require indemnification. The third concerns whether Wackenhut contractually waived its subrogation rights. The Court addresses each of these issues below.[2]

#### a. Indemnification Provision

##### 1. Enforceability

Paragraph 18(C) of the Agreement provides that the Agreement "will be governed by and interpreted under, the laws of the State of Ohio, without regard to its laws respecting choice of

---

[2] Preliminarily, there is no claim that either party's use of the declaratory judgment mechanism is an improper vehicle to resolve this dispute. The Declaratory Judgment Act, as well as Article III of the United States Constitution, requires the existence of an "actual controversy" between the parties before a court can assume jurisdiction. 28 U.S.C. § 2201(a). The "actual controversy" requirement requires that the dispute be "definite and concrete, touching the legal relations of the parties having adverse legal interests," and be "real and substantial" and susceptible to specific relief as opposed to a decision that would be advisory in nature. *Medimmune, Inc. v. Genetech, Inc.*, 549 U.S. 118, 127, 127 S. Ct. 764, 166 L. Ed. 2d 604 (2006). "Basically the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id*. In the present case, Wackenhut has refused to indemnify Goodyear for the costs of litigating a lawsuit, even though, as Goodyear claims, a valid contract requires it to do so. Furthermore, Wackenhut has made a demand and now sued Goodyear for subrogation despite an alleged waiver prohibiting Wackenhut from doing so. These disputes are real, substantial, immediate and involve adverse interests. Therefore, there is no question that the Court possesses jurisdiction to issue a declaratory judgment in this case if one is warranted.

(5:11CV01170)

law." ECF No. 15-1 at 8. Wackenhut argues that, as a matter of Ohio law and public policy, the indemnification provision is unenforceable because it does not specifically waive the immunity afforded to Wackenhut as an employer who pays into a workers' compensation fund. ECF No. 17-1 at 6-11. Wackenhut claims, therefore, that irrespective of what the terms of the provision actually require, it is not obligated to indemnify Goodyear in the present case.

To understand this argument, an examination of the immunity referenced by Wackenhut is necessary. Ohio's Constitution and workers' compensation regime shield employers who contribute to the state workers' compensation fund from statutory or common-law liability for injuries sustained by employees in the course of employment. Ohio Constitution, Art. II, § 35;[3] R.C. § 4123.74.[4] "The statutory and constitutional immunity granted to complying employers is crucial to workers' compensation law. The legislature granted this immunity to complying

---

[3] Section 35 of Article II of the Ohio Constitution provides in pertinent part: "For the purpose of providing compensation to workmen and their dependents, for death, injuries or occupational disease, occasioned in the course of such workmen's employment, laws may be passed establishing a state fund to be created by compulsory contribution thereto by employers, and administered by the state, determining the terms and conditions upon which payment shall be made therefrom. *Such compensation shall be in lieu of all other rights to compensation*, or damages, for such death, injuries, or occupational disease, and any employer who pays the premium or compensation provided by law, passed in accordance herewith, *shall not be liable to respond in damages at common law or by statute* for such death, injuries or occupational disease." (Emphases added.)

[4] R.C. 4123.74 provides: "Employers who comply with section 4123.35 of the Revised Code *shall not be liable to respond in damages at common law or by statute* for any injury, or occupational disease, or bodily condition, received or contracted by any employee in the course of or arising out of his employment, or for any death resulting from such injury, occupational disease, or bodily condition occurring during the period covered by such premium so paid into the state insurance fund, or during the interval the employer is a self-insuring employer, whether or not such injury, occupational disease, bodily condition, or death is compensable under this chapter." (Emphasis added.)

6

(5:11CV01170)

employers in exchange for their relinquishment of all their common-law defenses to claims of work-related injury." Kendall v. U.S. Dismantling Co., 20 Ohio St.3d 61, 65, 485 N.E.2d 1047 (1985); see Lamb v. Summit Mall, 2002 WL 533477 at *3 (Ohio App. 9 Dist., April 10, 2002).

Practically speaking, however, this immunity may be waived if an employer enters into an indemnity agreement with a third party who subsequently is found liable for the injury of an employee. Kendall v. U.S. Dismantling Co., 20 Ohio St. 3d at 61, illustrates this principle. U.S. Dismantling contracted with American Cyanamid to dismantle American Cyanamid's sulfuric acid plant. While disassembling pipelines at the work site, Kendall, an employee of U.S. Dismantling, was injured. Kendall brought suit against his employer and American Cyanamid. American Cyanamid then cross-claimed against U.S. Dismantling for indemnification based upon an indemnity agreement in their contract. The question before the Ohio Supreme Court was "whether the indemnity agreement at bar constitutes a waiver of [U.S. Dismantling's] statutory and constitutional immunity as an employer in compliance with Ohio's workers' compensation law." *Id.* at 64-65. The court recognized that an employer is entitled to waive its workers' compensation immunity by contract. *Id.* at 65. Nevertheless, the court determined that the indemnity agreement at issue did not achieve that purpose, and was therefore ineffective, because it did not "refer specifically to this particular immunity." *Id.* The Ohio Supreme Court therefore held: "[A]n employer in compliance with the workers' compensation laws of this state does not surrender its statutory and constitutional immunity from suits arising out of employment absent an *express and specific* waiver of that immunity. A general agreement of indemnity with a third party which does not specifically express the employer's intent to waive this particular

7

(5:11CV01170)

immunity is ineffective for that purpose." *Id.* (emphasis added).

Wackenhut's argument is premised upon *Kendall* and the various cases that have followed *Kendall's* explicit holding. See *Lubrizol Corp. v. National Union Fire Ins. Co.*, 200 Fed. Appx. 555, 561 (6th Cir. 2006); *Lamb v. Summit Mall,* 2002 WL 533477 at *3; *Pentaflex, Inc. v. Express Services, Inc.*, 130 Ohio App. 3d 209, 215, 719 N.E.2d 1016 (1998); *Waddell v. LTV Steel Co., Inc.*, 124 Ohio App.3d 350, 357, 706 N.E.2d 363 (1997); *George Gradel Co. v. A.A. Boos & Sons, Inc.*, 1995 WL 557321 at *2 (Ohio App. 6 Dist. September 22, 1995); *Best v. Energized Substation Service*, 1994 WL 440471 at *5 (Ohio App. 9 Dist. August 17, 1994); *Willard v. Toledo Clutch & Brake*, 1986 WL 13375 at *2 (Ohio App. 6 Dist. November 28, 1986); *see also Davis v. Consol. Rail Corp.*, 2 Ohio App. 3d 475, 477, 442 N.E.2d 1310 (1981) (preceding *Kendall* but espousing same rule). The indemnity provision in the Agreement between Goodyear and Wackenhut does not specifically waive any immunity possessed by Wackenhut. Therefore, in Wackenhut's view, the indemnity provision is ineffective and does not require indemnification to Goodyear.

The Court is not persuaded by this argument. *Kendall's* specific-waiver requirement applies to employers who are "in compliance with the workers' compensation laws of *this state,*" namely, Ohio. *Kendall v. U.S. Dismantling Co.*, 20 Ohio St. 3d at 65 (emphasis added). Wackenhut does not dispute that it is not such an employer. ECF Nos. 18 at 6; 19 at 7. Rather, when Wackenhut was ordered to pay workers' compensation to its employee, Wells, it was required to do so as an employer subject to *Alabama's* workers' compensation laws. ECF No. 15-7 at 1. *Kendall* and its progeny do not apply to Wackenhut as an Alabama-covered employer.

8

(5:11CV01170)

Nor could the indemnification provision be considered unenforceable under Ohio public policy. Ohio's Constitution and workers' compensation statute confer immunity only upon employers who contribute to Ohio's workers' compensation fund. *See* Ohio Constitution, Art. II, § 35; R.C. § 4123.74. Ohio's workers' compensation regime is wholly unconcerned with employers who pay into the coffers of another state. There could be no basis in law or policy to grant such employers privileges reserved exclusively for employers who pay into Ohio's fund.

Clearly, Wackenhut, who employed Wells in Alabama, is not entitled to the immunity bestowed by Ohio's workers' compensation laws. The rule announced by the Ohio Supreme Court in *Kendall* aimed to restrict the ability of employers who *are* so entitled to waive that immunity. The court ostensibly desired that these employers be certain before relinquishing their privileges under Ohio law. Yet, because Wackenhut has no such privileges, there can be no surprise that *Kendall* does not impose the requirement of a specific waiver to the contract at issue.

Wackenhut claims it does not matter "whether Wackenhut did or did not pay into Ohio's workers' compensation system" because it contributed to Alabama's fund. ECF No. 19 at 7. Like Ohio, contends Wackenhut, Alabama also protects complying employers from liability for its employees' work-related injuries. ECF Nos. 19 at 7; 21 at 4; *see* Ala. Code § 25-5-53.[5] This argument falters on several levels. First, as discussed, the language and reasoning of *Kendall*

---

[5] Section 25-5-53 of the Alabama Code provides in relevant part: "Except as provided in this chapter, no employer shall be held civilly liable for personal injury to or death of the employer's employee, for purposes of this chapter, whose injury or death is due to an accident or to an occupational disease while engaged in the service or business of the employer, the cause of which accident or occupational disease originates in the employment."

(5:11CV01170)

makes it clear that it does not reach out-of-state employers, even those that comply with the workers' compensation laws of another state. Second, Wackenhut has not demonstrated that Alabama law applies. Finally, to the extent that Alabama law is relevant, it offers Wackenhut no shelter. The Alabama Supreme Court has concluded, contrary to the determination of the Ohio Supreme Court, that a complying employer may waive its workers' compensation immunity through a general indemnity agreement without having to specifically waive that immunity. *Goodyear Tire & Rubber Co. v. J. M. Tull Metals Co.*, 629 So. 2d 633, 638 (Ala. 1993) ("we hold that enforcement of an express indemnity agreement against an employer by a third party does not violate the exclusive remedy provision of Alabama's Workers' Compensation Act.").

In summary, the Ohio choice-of-law provision cannot achieve what Wackenhut hopes. "A 'choice of law' provision in a contract names a particular state and provides that the substantial laws of that jurisdiction will be used to determine the validity and construction of the contract . . . ." 17A Am. Jur. 2d, Contracts § 261 (2012). It cannot, however, convert a party's underlying status as an Alabama-covered employer into an Ohio-covered employer in the context of workers' compensation. Wackenhut must be held to the indemnification provision.

This is hardly an unexpected or unjustified result. The "[p]rime objectives of contract law are to protect the justified expectations of the parties and to make it possible for them to foretell with accuracy what will be their rights and liabilities under the contract." *Humbert v. United Ohio Ins. Co.*, 154 Ohio App. 3d 540, 543, 798 N.E.2d 25 (internal quotations omitted), *appeal not accepted*, 100 Ohio St. 3d 1531, 800 N.E.2d 48 (2003). Wackenhut, a sophisticated entity, entered into a broad indemnification agreement with Goodyear and stipulated that it did so

10

(5:11CV01170)

"knowingly, voluntarily, and not under duress." ECF No. 15 at 2. In return, Wackenhut received a contract to provide security services for a large corporation. If Wackenhut were unsatisfied with the breadth of the indemnity provision, it could have negotiated different terms. Wackenhut could have inserted an exception to the provision absolving it of any duty to indemnify where the underlying claim involved an injury to its own employee. Having failed to do so, Wackenhut cannot now be excused from the bargained-for terms. Wackenhut's argument that the indemnification provision is unenforceable under Ohio law and public policy is not well-taken.

### 2. Applicability

Goodyear argues that the plain terms of the Agreement justify the granting of summary judgment against Wackenhut on Goodyear's declaratory judgment and breach of contract claims for indemnification. ECF No. 16 at 7-12. Wackenhut responds, to the contrary, that even if the indemnification provision were enforceable, Goodyear is not entitled to indemnification because nothing in the record demonstrates that Wells' injury arose from Wackenhut's performance of the Agreement. ECF Nos.17-1 at 14; 21 at 8.

In Ohio, "[t]he prima facie elements of a breach-of-contract action are: the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." Siemaszko v. FirstEnergy Nuclear Operating Co., 187 Ohio App. 3d 437, 444, 932 N.E.2d 414 (2010) (internal quotations omitted). "Contract terms are to be given their plain and ordinary meaning . . . and [w]hen the contract is clear and unambiguous, the court may look no further than the four corners of the [contract] to find the intent of the parties." Allstate Ins. Co. v. Eyster, 189 Ohio App. 3d 640, 649, 939 N.E.2d 1274 (2010) (citation omitted; internal

11

(5:11CV01170)

quotations omitted). "If a contract is clear and unambiguous, then its interpretation is a matter of law . . . ." Inland Refuse Transfer Co. v. Browning-Ferris Industries of Ohio, Inc., 15 Ohio St. 3d 321, 322, 474 N.E.2d 271 (1984). Like any contract, "[t]he nature of an indemnity relationship is determined by the intent of the parties as expressed by the language used." Worth v. Aetna Casualty & Surety Co., 32 Ohio St. 3d 238, 240, 513 N.E.2d 253 (1987).

The relevant language of the indemnification provision is plain and unambiguous. The provision states that Wackenhut "expressly agrees to indemnify, defend and hold GOODYEAR . . . harmless from any and all claims" on account of "any loss, damage or injury to any persons . . . arising in any manner out of [Wackenhut's] performance of this Agreement . . . ." ECF No. 15-1 at 3. The Agreement requires performance by the furnishing of "security and protective services" for the "protection of the PLANT by means of trained, professional security guards." ECF No. 15-1 at 1.

In the Alabama lawsuit against Wackenhut, the trial judge made the following findings of fact: (1) on June 18, 2003, Wells suffered an on-the-job accident which arose out of and in the course of his employment by Wackenhut; (2) the injury occurred when Wells was exposed to a chemical when his hands came into contact with the chemical on a buggy; and (3) at the time of the accident Wells was working as a Wackenhut security officer at the Goodyear plant in Gadsden. ECF No. 15-7 at 1. For the purpose of meeting Goodyear's summary judgment burden, these facts sufficiently show that indemnification is required.

Wackenhut does not present any evidence calling these facts into dispute. Rather, Wackenhut argues that even if the evidence shows that Wells was injured while employed by

(5:11CV01170)

Wackenhut at the Gadsden plant, it does not establish that the injury arose out of Wackenhut's performance. ECF No. 19 at 9. The Court is unimpressed by this distinction. The provision requires indemnification if the injury arose "in any manner" out of Wackenhut's performance of the Agreement. The plain meaning of the word "arise" means "to come about." Webster's Third New International Dictionary (1993). The performance required of Wackenhut is the furnishing of security services to Goodyear. Unquestionably, Wells' injury, which occurred while he was on the Goodyear premises as a Wackenhut-employed security guard, came about in some manner from Wackenhut's provision of security services. Moreover, Wackenhut supplies no additional facts to the Court that would create a genuine issue suitable for trial, and the Court is not bound to search the entire record for its existence. *See* Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479-80 (6th Cir. 1989).

There is no dispute that Wackenhut's withdrawal of its agreement to indemnify injured Goodyear by forcing Goodyear to incur costs defending the Alabama lawsuit and litigating the present action. Accordingly, on the issue of indemnification, the Court grants summary judgment with respect to Goodyear's claims for declaratory judgment and breach of contract. The Court denies summary judgment in regard to Wackenhut's counterclaim seeking declaratory judgment. That counterclaim is dismissed.

**b. Waiver of Subrogation**

Paragraph Six of the Agreement requires Wackenhut to obtain "Blanket Waivers of Subrogation for all of the above insurance policies." ECF No. 15-1 at 4. Consequently, Goodyear argues that "Wackenhut was to assume all liability for injuries to its own employees

13

(5:11CV01170)

and as part of that, expressly waived any subrogation right it otherwise might have under Alabama substantive law." ECF No. 16 at 16.  Wackenhut's only response to this claim is that "the waiver of subrogation in the Vendors Agreement cannot be valid when the indemnity provision is not valid."  ECF No. 21 at 10.  According to Wackenhut, "[t]he plain terms of the Vendors Agreement . . . state that this insurance coverage, and thus any waiver of subrogation, 'is provided to the extent of the indemnification provisions in Section 5 – Vendor's Indemnity.'" ECF No. 19 at 10 (*quoting* Paragraph Six of the Agreement at ECF No. 15-1 at 4).

"Ohio courts have repeatedly held that waiver-of-subrogation provisions are valid and enforceable."  *Acuity v. Interstate Construction, Inc.*, 2008 WL 625097 at *2 (Ohio App. 11 Dist. March 7, 2008).  Because the Court has already decided that the indemnification provision is enforceable, Wackenhut's lone defense carries no force and cannot prevail.

Accordingly, on the waiver-of-subrogation issue, the Court grants summary judgment with respect to Goodyear's claims for declaratory judgment and breach of contract.  The Court denies summary judgment with respect to Wackenhut's counterclaim for subrogation.  Wackenhut's counterclaim for subrogation is dismissed.

### IV. Conclusion

Based on the foregoing, the Court grants Goodyear's Motion for Summary Judgment in its entirety, and denies Wackenhut's Motion for Summary Judgment.  Wackenhut's Amended Counterclaims are dismissed.  Accordingly:

**(1)** Judgment is declared by the Court in favor of Goodyear and against Wackenhut that Wackenhut is under contractual obligation to indemnify, defend, and hold

(5:11CV01170)

harmless Goodyear for the negligence claim brought by Wackenhut's former employee, Jerry Wells;

**(2)** Wackenhut is in breach of the Agreement with Goodyear due to its refusal to indemnify Goodyear and by claiming subrogation; as a result, Wackenhut is liable to Goodyear for all direct, indirect and consequential damages as a result of its breach;

**(3)** Goodyear may recover all other legal and equitable relief as this Court shall deem just.

The parties shall appear before the Court on January 31, 2013, at 9 a.m., for a hearing on Goodyear's claims for damages,[6] which shall include the costs incurred in this litigation to seek enforcement of the indemnification agreement. See *Allen v. Standard Oil Co.*, 2 Ohio St. 3d 122, 126, 443 N.E.2d 497 (1982) ("when an indemnitor wrongfully refuses to defend an action against an indemnitee, the indemnitor is liable for the costs, including attorney fees and expenses, incurred by the indemnitee in defending the initial action and in vindicating its right to indemnity in a third-party action brought against the indemnitor.").

IT IS SO ORDERED.

| | |
|---|---|
| January 23, 2013 | /s/ Benita Y. Pearson |
| Date | Benita Y. Pearson |
| | United States District Judge |

---

[6] The docket reflects that Goodyear has made a jury demand. Not later than January 25, 2013, Goodyear must inform the Court as to whether it continues to request a jury.

15